States v. Dehlinger. Mr. Minns. May it please the court. Good morning, your honors. There's two books, copies of the books in those transcripts that y'all have and there's an author in both of them and the same author is Tara Legrand. Tara Legrand is one of three authors by the only product that AAA ever created and she's also the author of a romance novel describing her adventures with the attorney who was later assigned to represent Dr. Engelhardt. The, the um... You said Dr. Engelhardt, of course you meant... Dr. Dehlinger and I apologize, your honor. I was just looking to be sure that I went wrong. No, it's a birth defect. I do that with faces and names and I appreciate the court's indulgence. I'm glad there's no jury here to hear it. I've done that in front of juries before. Uh... We've been pro bono on this case for six years and so the two names we keep reading anything we read on either of the names pulls up and they're both in the name uh... Dr. Dehlinger was a victim. I mean, he's a victim. He's actually acknowledged in those sheets as a victim and um... As I, I just finished reading the, the Stitt case if I'm pronouncing it correctly this morning where the court did not grant a reversal but it was talking about money and the worries about money and I noticed like the second time this week that I was reading that two thousand page summary on page one twenty the number one person that profit on the government graph from approximately two hundred fifty thousand dollars would be uh... Tara LeGrand. Now on the next page of the indictment uh... she's number three but the two hundred fifty thousand dollars stood out because that's the amount of money that Dr. Dehlinger, cash money invested in the uh... in this organization was cheated out of which had counsel done something about that in sentencing it might have significantly reduced the sentencing. It might have offset the uh... taxes that were due. This uh... this uh... you took a one semester uh... ethics course when I went to law school now you're required to take a bar exam and uh... an ethics bar exam so now we will eliminate all unethical lawyers. The uh... the bar exam rules start to ratify these conflict issues stronger and stronger and stronger and I guess as we practice law we start to see them too how lawyers make decisions based on potential conflicts but here's a decision that cannot be made and could never have been made uh... uh... the uh... long-time uh... attorney for Tara LeGrand who suckered Dr. Dehlinger into this scheme to begin with who prevented him from going to other attorneys or CPAs when he was questioning it uh... after his home got raided and they did an armed SWAT squad on his daughters and his wife and him and he was scared and she still reassured him and kept him involved told him it was perfectly legal over and over and over and over again in order to win one of these as professor Freeman uh... points out and and professor Freeman is one of the top ethics professors in the United States but he also interestingly enough uh... licensed in the tax court and was familiar with these type of cases in the ethical conflicts in order to win uh... it's pretty much standard procedure that the person that got you in trouble takes the stand and they either side with you and say I believe I believed it was legal or they say I tricked them or they say I've pled etc etc but you can't win one of these cases without uh... one of the people put the uh... this together uh... the the cheek stand says what do you believe in your mind and your heart but you have to prove that to a jury and and the truth is the jury starts off thinking that well we we don't uh... presume innocence we're going to require them to prove that they really believe this stuff especially if it's difficult uh... to believe so these three people were all secretly represented all three authors of the triple-a book terry legrand uh... uh... gary kuzel and uh... colas red were all three secretly represented by uh... uh... inglehart inglehart knew that the government knew that triple-a knew that nobody else knew that uh... until these affidavits started coming out now they did know that he had represented terry legrand that he had gotten a mistrial for terry legrand terry legrand in her romance novel says that he's the greatest lawyer in the face the earth and it is only his work that did that the other there were two other uh... people that got mistrials and uh... terry legrand's book says that they were incompetent and uh... yes she did she ultimately pled uh... no ma'am uh... it did not uh... it she did uh... twenty four months in prison uh... uh... when she testified though she testified that she told all the triple-a people this is really important with doctor dillinger because she prepared the amended return on which he was sentenced and she prepared the third return on which he was sentenced and convicted did she commit perjury when she testified or did she commit perjury when under oath she tendered her guilty plea in the western district of washington only god knows for sure she may have done it both times she may have at one time believe this was legitimate she may never have she told so many lies to us throughout this she definitely uh... so how could in light of your answer which i appreciate how can it realistically be said that calling her was an objectively reasonable alternative approach to the defense in this case because uh... and and the government would have put it put slightly differently what lawyer in his or her good mind would ever have called miss legrand as a witness well i definitely would have and i did subpoena her and i also put planners on during the trial in seattle and we won acquittals in all counts and i definitely would have put her on in this case because she had said that they all believed it was legitimate the jurors either would have heard her say i believed it was legitimate and i told them it was legitimate or gone by her confession i knew it was a crooked thing and i suck these people in but i did tell them it was legitimate doesn't matter if you could have said they not it was it was a fraud and they knew it was a fraud everybody knew it was a fraud that's just as likely well uh... yes your honor she could have said that and thank goodness this uh... fifty five hearing and at the hearing she said exactly she testified under oath and she said that they'd she told everybody that was legal it's in the transcript in front of you right now my colleague you just told me we aren't ever sure when she's telling the truth so who knows what you would have testified she'd been called at trial she has so many inconsistent versions of what she's her testimony is the court is correct you cannot guarantee the testimony accuracy or more than you can the purger uh... mister inglehart but we do know this she would have had to say something it's very difficult we know what she said when she was called and that is i invoked the fifth amendment well act no not at the twenty two fifty five i'm talking about in the subsequent trial where she was subpoenaed yes put on the stand she invoked the fifth amendment there was no ruling on whether she had a right to do it and the reason why is she didn't prepare the people's returns in those cases she wasn't as critical a witness and so other people that gave the same speeches that tara legrand including collis red by the way who testified in the twenty two fifty five hearing and was never called including he uh... testified at that trial and and the marines were acquitted and they were quite it because the jurors had someone someone to say other than the victim these people these experts told me it was legal it would've been impossible for her actually it would've been possible for her to say that she never told anybody they were legal because she pled guilty to telling uh... people that the plans were legal when she in fact didn't believe they were legal so she part of part of what she pled guilty to was exculpatory for our purposes if i have a cpa that gets up on the stand and says i told doctor dillinger this was legal i have an excellent defense and i would expect to win that if i have only doctor dillinger says that someone told me that and they're not going to testify you just gonna have to take my word for it you're looking at a conviction uh... they needed uh... tara legrand but collis red could have done it too collis red was precluded what you have is is uh... the uh... person who's heavily committed with all three of these people we don't know the relationship between them and and kuzel except through inglehart's words we do know say about the fact that before he accepted the representation there was this meeting and discussion and everybody agreed that she was not going to be called what you have is a lawyer and in fact he said if she's going to be called uh... i'm i'm not in this case he he does he does say that image and that and that is and that is and the judge found that to be accurate and true well yes the judge did and i i can't i can't say i i think it was uh... abuse of discretion finding that mister inglehart was telling the truth when he swears under oath well you have a clear error standard here don't you it's not abuse of discretion uh... credibility determination i believe it's abuse of discretion as to whether a witness is truthful or not i believe so on on on this is a mixed case of of law it's de novo on law and i believe if i'm mistaken i'm mistaken your honor i believe it's uh... abuse of discretion uh... on this mixed case of law i have a case saying that and if it's wrong i apologize to the court uh... what we have is a situation where inglehart was told by the government you can represent all three of these planners the government knew about it uh... not counsel present but counsel before him knew about it and he said you can't represent red and legrand and kuzul one of them is more likely innocent the other two are more likely guilty you're gonna have to pick one uh... uh... under oath and an affidavit uh... mister inglehart says i know i represented all three of them they were my clients under oath on the witness stand he said they really weren't my clients it didn't rise to the level of being clients even though he advised mister red to plead guilty and even though mister red says that they had three hours of telephone conversation uh... on on the case uh... terry legrand would have had to be consistent either with her plea or her statement and both times she told doctor dillinger and everyone in the audience that this was perfectly legal and she gave her uh... cpa reasons why same thing with uh... callous red same thing doctor dillinger was in the audience with both of them he took their words for it and when there was a raid some people went to other cpas and they refiled for them and some people went to terry legrand or she was assigned to them and terry legrand kept them in the program had terry legrand not done that uh... doctor dillinger wouldn't be here today wouldn't have been incarcerated for four years he would have gotten another cpa had she not been there to tell him it was perfectly legal at all times that part of the testimony she would give unquestionably uh... i think your time is yes your honor thank you good morning members of this uh... honorable court i'm kevin lombardi from the department of justice tax division on behalf of the united states the government submits that this court should affirm the district court's order which found that the defendant has not made a successful motion under section twenty two fifty five specifically the court made findings and credibility determinations that found that there was no link between trial counsel's decision not to call the three witnesses at trial and between any prior relationship that he had with those individuals that's belied by the record itself the fact that he would start off by saying i'm not going to call her and almost conditioning that on representation that fact alone belies what you just said his prior relationship with her set the course for his relationship with his new client how does the record not establish that to answer that question how does the record not establish that he started off by saying i can't imagine a lawyer saying listen i don't need all the facts of your case but if it involves calling this person i'm not even going to represent you tell me how that is not set the course for his representation for the doctor i don't think it does your honor because he knew he was well familiar with tara lagrand after years of being familiar with the trial in seattle yes that's the best the substance of the conflict go ahead so he was well familiar with tara lagrand and her case and her testimony and what she would be able to testify and more particularly with the disposition of her case which had happened well before the defendant's trial your honor let me ask you this same question is it the government's position that if an attorney tells uh... the client at the outset of the representation uh... i have a conflict something more than was said here to be sure i have a conflict with witness x and if you think that witness x is necessary you shouldn't hire me what do we do about that ultimately the client wants to hire witness wants to call witness x is there a conflict the predicate there your honor there was no conflict uh... established at that time what mr engelhardt said is here's my trial strategy for this case if you want this witness if you want to pursue a different strategy i'm not the lawyer to do it and in that case he's i think well i understand he didn't say that and you think the situation would have been different if he'd said i'm not the lawyer for you because i think there might be somebody down the road might think there's a conflict if i call this person and represent you you think that your case would be different that could be a different situation your honor i mean in other words you think that there would be a basis for 2255 here not necessarily if the decision would have been in the end same if the decision not to call her would have in the end been the same your honor well it was the lawyer's decision not to call her right so exactly the same facts except we slightly change the beginning conversation where he says i think there may be a conflict so if you want you want this witness called remember that i'm not your man and then the facts unfold as they do here where the client says every now and again and when are we going to call tara and he kept saying remember we're not calling her so does that give her a basis for 2255 that could change the conflict analysis but i don't think it would change the 2255 determination the defendant would still have well the conflict analysis is the basis for the 2255 right it's the beginning of the analysis your honor that's the grounds for granting 2255 relief whether you have set forth an adequate ineffective assistance of counsel argument on the basis of conflict isn't that right that's what we have here that's what we have in my hypothetical you must also show an adverse effect on the relationship your honor well but it all comes from the conflict in the lawyer client relationship that's all i'm asking you so how would that be different how would my hypothetical be different come out to a different conclusion that yes there was a conflict of interest and this person should get a new trial or maybe you don't think it would i just i'm trying to it would it would not be different your honor because there would still need to be that adverse impact if calling that witness was not good for that client as a matter of trial strategy there's no 2255 claim well i understand but you're assuming it's a matter of trial strategy and my hypothetical is he's saying right out it's a conflict for me to call this witness i don't think he is your honor i don't think he said it is a conflict case he did in the hypothetical and what i'm doing is asking you is would that make any difference in the argument that she was that he was denied ineffective assistance okay i understand you're on i'm sorry it must have been obtuse it's going down a hypothetical but if the lawyer cut off a defense that the client wanted to pursue and that arose from a conflict of interest that i believe that what happened he cut the defense off i mean i when i practiced law i thought that the facts ought to dictate what you do in a case but at the onset you tell somebody i am not going to call this person and that's the condition upon which you have to retain me then all along for example did the doctor testify in this case he did your honor and the doctor said he was told it was proper right correct he testified that he was told that this was this was legit yes or no that's easy you know testified that he believed that it was and he was told that it was legit did he say that he did say okay all right so then the lawyer couldn't have put him on unless he believed at least in good faith his client was telling the truth correct that's correct so therefore whatever he heard from lagran must have been that lagran told him that it was proper right in 2002 that's what the defendant's testimony was was that tara lagran told him that it was proper and the lawyer knew that right the lawyer knew that that would be her testimony i mean presumably in other words is it's unethical to put a client on the stand you have no good faith basis to believe that they're telling the truth so why wouldn't she be appropriate to say didn't you tell my client that this was appropriate it's a potential strategy potential it's the very essence of the strategy the only way you are convicted you have to willingly it has to be willful fraud that's that's that's that's the whole that's the differential said that's the piece de resistance no i don't agree your honor okay you don't agree tell me why you don't agree putting her on the stand was also not viable in this case why not she well once she had given prior inconsistent statements under oath uh concerning the legitimacy of what the government does it all the time and they say who do you expect us to call choir boys they always call people who are school teachers yes so he has a long jacket what difference is made right now he's telling the truth you do it all the time united states government well what you mean defense can't do it has to be a quiet lady or quiet girl before she can testify no you told my client and you duped them that's a viable and almost only defense that he would have other than his lone voice in the wilderness saying i thought this was correct and he would tell them i'm not going to call her i don't care what the facts dictate later and that's the condition from which i represent you and that's not a conflict and the government said he had a conflict on the record and wouldn't let him represent all three of them now you backtrack it you represent united states government that's a high a high standard not just to get the convictions but to try to get in terms of what's appropriate under the constitution but how can you say that's not a conflict it was not an actual conflict in this case it did not rise to anything that had any impact upon his performance what one thing i haven't heard you talk about is that the supreme court law on granting 2255 relief is is pretty difficult test to meet and there's a lot of talk about trial strategy and reasonable trial strategy to the two that supports what the lawyer did and there were a lot of findings by the district court here about that about there would be been alternatives to this testimony from other people that were better that is correct you don't have your honor the defendant's lawyers trial strategy was to introduce that the defendant relied on in good faith upon what was told him another client of the programs was called at trial to testify about what participants in the programs were told in addition there was an expert witness that essentially testified to what the defendant now says he would have wanted a triple uh anderson's arc planner to testify to was that there was nothing wrong with the structure of the programs well the lawyer that is accused of giving ineffective assistance here did he testify in the 2255 proceedings yes he did your honor so what does he say his trial strategy was his trial strategy was to show that the defendant believed in good faith that the programs were legitimate that he participated why didn't he call the witnesses that the defendant now says should be called the most logical witnesses to to call would have been those who introduced the defendant to the program and upon whom um i'm not he interacted i mean to cut you up cut off your judgment but i thought the record was perfectly clear that he knew from his half decade of involvement with these people that he was not about to call a single planner as a defense witness in this trial isn't that perfectly clear that is correct he knew everything there was to know about these planners didn't he he did your honor he represented miss legrand he was uniquely positioned to know what these planners were up to and what truthful testimony from them would entail i mean i don't want to put words in your mouth but i would have thought that that would have been a part of your answer to judge mods i certainly would have gone there your honor and you stated it better than me what you agree with judge davis said correct right i agree your honor that means and for the very same reason that's why he's the worst person to have for the client that he had do you agree with that i do agree with that the man says he would have put her on knowing nothing about her except that she testified one way and pled guilty months later totally contradicting herself so so i guess you had a choice between mr mims and mr inglehart who knew everything about the planners and what they were up to and a lawyer who did who had no conversation with her in advance whatsoever all he had was the the two transcripts and to your point your honor he was also present in court when gary kuzel uh was a defendant at that trial when richard marx with whom the defendant primarily interacted in joining anderson's arc and he is lawyer here who is the he he was also present in court oh mr engelhardt counsel would you allow me this assuming what judge davis said assuming that's all correct that he knew exactly their profile right so let's assume that but you have a client that presumably you believe because you put them on there is a such thing as that sometimes you have to take on witnesses and you call them adversely right you're familiar with that term that kind of i understand where you have to do that correct correct he couldn't put he wouldn't be the lawyer that could adversely take on legrand because of his prior relationship with her matter of fact we can't even make him tell us everything he told her because that's attorney client privilege how in the world could he adversely put her on he could not do that could he well one for your honor she did give a execute a complete waiver in this case including discovery materials of work product in the prior prosecution so this is a case he could have put her on adversity i think he could have your honor as long as uh why are you so tentative of course he could have put her on he had a waiver and why didn't he because it was not good for the defendant how do you know that well in the facts of this case she would have offered no defense to counts two and three of the indictment those crimes were completed before the defendant interacted with tara legrand in 2002 so the reasonableness of the defendant's reliance she could have testified generally what their scheme was and how they do people and send them to seminars that wouldn't have been helpful there were other means to get the same information well he didn't call red you're right and the government did indict him correct that's correct why is that why not i'm not sure your honor is not involved don't you know the case i know the case i'm here so i mean you're the government and you read you don't even indict so why didn't he put him on he's obviously a truthful honest person because you so much so he wasn't indicted why didn't you why did he call him well the record establishes here that collis red had no knowledge of the defendant's tax returns and he also uh had never met the defendant it would not have been reasonable strategy to rely upon uh red as the person who gave you your good faith belief in the program do you agree with judge gregory i think you've agreed with him twice once explicitly and once implicitly that a criminal defense attorney under the sixth amendment in federal court can only put his or her client on the stand if the attorney believes the client i'm not one cat i said good faith does does doesn't does an attorney have any role to play in whether a criminal defendant takes the stand obviously ethically defense attorney cannot knowingly offer false testimony or evidence to a court but under the fifth amendment right to remain silent or to testify and the related sixth amendment right isn't there a major difference between the role of the lawyer in choosing which witnesses to call as opposed to whether the client himself or herself takes the stand and testify there is and if i'm following your honor it's the client's decision whether to testify or not absolutely i mean sometimes the defense lawyer has to stand there and say uh tell the ladies in general the jury your story right that's the best a lawyer can do given certain level of knowledge but it's exclusively the lawyer's role as a as the advocate for the client to decide which witnesses take the stand isn't the law clear that is correct your honor and in this case i think no matter who was representing tara legrand that person would have advised tara legrand to invoke her fifth amendment right you're coming at it i think in somewhat of an awkward position the point is we don't care what dr dellinger wanted by way of witnesses do we that's not his call he's the defendant but it's the professional judgment of the lawyer who decides in a defense case who takes the witness stand i thought the law was couldn't be more clear about that in contrast to whether the defendant himself takes the stand as to which the lawyer has no say whatsoever that is correct and that that dovetails in with the tactical judgment of the is one of the most uh it gets to the very core of what evidence you put on and whether you put on any evidence apart from your client's testimony that is correct yeah but the standard for judging an iac claim will look at who you put on and what your client told you about who was available and who had appropriate testimony and you're not putting them on can probably be the basis for normally the lawyer's role in deciding who you put on because otherwise you would eviscerate an iac claim you said listen i'm the lawyer i put on who i want to put on and that's the end of the case that's not the end of the case if this is the law then basically mickens is extended to the point of extortion distortion of the whole concept of conflict because all you have to say is yeah i had a conflict the government said i had a conflict before i represented before but i decided early on i told the client i'm the lawyer i'm not going to call it and that's the condition period so there's no more conflicts now because you basically have gotten your client to waive it if it exists right i don't agree well why not wouldn't that be the logical extension of what this case would represent well when you had said that there was a conflict then and it always existed that is not necessarily the case here a conflict that was disclosed by a prosecutor in 2002 does not necessarily in here during trial in october of 2007 what changed in terms of his knowledge of what what she had to say and what the role would be in defending the doctor what changed he was intimately familiar with what she would say he had represented her throughout the and so he was intimately familiar and he meaning mr engelhard as to what she could offer at trial and that then you have to assume that everything he knew about her and what she told him would not be favorable to the doctor it had to be that had to be the assumption right not necessarily your honor if it was bad trial strategy to put her forth as the proponent of the defendant's good faith defense there would be no 2255 claims she told him oh she told him yeah you know that's what we did do but we told him the whole time this was legitimate and he knew that and he didn't put her on would that make a difference it could make a difference it's not the facts facts here it's his choice he can choose not to put her on what difference would it make yeah she told me the duped this man completely but i'm not going to put her on because i don't want to put her through the pain of testifying so what difference does it make if it's totally the lawyer's call well there's no evidence in this case your honor that you would have said one thing or another that's the point is that's why mickens with all due respect to the president of this court is so wrong you can't even make the lawyer tell you what she told that's the problem i don't know why we go so what she said because that's a that's attorney client privilege how in the world can you ever establish a case like this when you can't even make your lawyer tell you what that other person even told him or her but in this case your honor the waiver go ahead in this case your honor there was a waiver so the lawyer did testify as to what he would have said what his assessment of this confidential uh i have a little bit of trouble the lawyer mr engelhardt did testify at the 2255 hearing if that was the question from judge mott but not as to everything she was told he was told by her we don't know the scope of of everything i and did he say something with attorney client privilege did he not i my recollection of the records is he never invoked attorney client privilege he did not say her conversations some of the conversations were privileged he felt was privileged i'm not aware of that in the record your honor if it is would that make a difference in this case no your honor oh wouldn't even make a difference okay all right okay thank you very much you mr mins what would have adequately waived the asserted conflict here well the law is clear on that in the american bar association the sound just tell them because i'm not clear so you just come right now you must give a full and complete disclosure to the client you must have the ability to believe there is no conflict that you can wave in other words it has to be waivable which this isn't there's never been a case where the person who prepared the return and the person who signed the return at the advice that prepare has ever been allowed to represent the same person there's no recorded case but assuming he was representing both of them at the same time yes well he absolutely was he was the only attorney of record for the grand before this after this during this okay okay just bear with me for a second if he wasn't representing her at the time that he was I don't think so but his testimony on that your honor give judge motz a more thorough answer to that question yeah the the first one and the second sequential representation well this if this is a case of sequential representation is there any difference in the law or the law the laws is looks more harshly on simultaneous but sequential is also looked on pretty harshly so if this is a sequential case what what's our standard here what are we looking for if this is a sequential if this is a sequential case which it is admitted to be sequential and as a matter of the testimony of the government's admissions on this fine if it's a sequential case and it is a sequential case what's the standard the standard uh the standard is that if it will be if there's any possible conflict and if he had and the the sequential nature of it by as a matter of law is a potential conflict he has to explain it to the client get the client's release in writing he did not get the client's release in writing and there's no evidence of any explanation his test did the doctor testify about this uh yes your honor and did he testify that the lawyer never mentioned this to him this is this this beginning conversation if you want me and you want to call that you can't have me if you want to call this witness no this is this is the testimony it's not that specific the testimony the doctor is that that uh that he constantly wanted tarry legrand i understand that testimony i'm asking about the testimony about the conversation at the beginning of the representation i don't think that's in the record your doctor never testified one way or the other whether he had this conversation with this oh he said that he did not tell him that he didn't explain conflict to him at all did the lawyer tell did the doctor testify that his lawyer said to him that if he wanted to call tarry legrand he should get another lawyer specifically what he said was that he wrecked he did not want he did not believe he was the lawyer to call there's an email there's an email that if he if he called tarry legrand specifically what he told him was if you call tarry legrand to the stand i will leave you in the case and the testimony of the co-counsel who had never tried a case before during his life was that uh he said that yes i'm quitting the case he said i'll leave you in the case yes sir his lawyer yes and when did that occur this occurred during the this this was either a couple of days before well they were constantly exploring this dr dillinger was constantly asking me talking about this yes dr dillinger was demanding tarry legrand doctor the doctor acknowledges that the lawyer is constantly saying to him no we shouldn't call this person that is true your honor and then the co-counsel says well no he won't call him he says he won't call him and the co-counsel had a conflict as well right co-counsel uh said i'll put her on and little council had a conflict as well right because his partner represented legrand i don't disagree with that your honor at all i don't disagree is that your argument here no it is not the lead counsel called the shots co-counsel had never tried a case before in his career in front of a jury he was pretty much doing whatever inglehart told him to do inglehart threatened to leave when co-counsel and this is in the record said i'll put her on he really wants her on and i'll put her on and he said i can't she's my client and he was simultaneously representing her there's constant communications with her and him the eve of this trial after this trial the only time that he wasn't representing her really was when she was getting legal advice and he says you know i'm gonna have to be paid i'm gonna have to there's another huge conflict this lawyer was getting cja funds he was getting paid by tara legrand he was getting paid by triple a he couldn't afford to put tara legrand on the stand he might have been facing his own charges so let me ask this if i may your submission i take it is that you're relying on a contention that the conflict here was inherent you believe this case is yes there's an inherent well well not not exactly not all forced because there's there's more ethical different well there's more ethical violations and i've seen in any published case ever we're not interested in ethical violations we're interested in sixth amendment standards and the fact of the matter is mickens does cut back on sullivan yes you agree with that right yes i mean the bar the bar was shot when mickens came out because everybody thought sullivan met any conflict of interest any time anywhere of any nature you get post-conviction relief and the supreme court came in and mickinson said no no we didn't really mean that actual conflict of interest is far more nuanced and so as i understand mick the question is what would a non-conflicted lawyer have done differently from what engelhardt did in this case he would have you say you would have blindly put legrand on the stand with no idea what she was going to say other than these two transcripts which conflict with each other no you would have done that because your client insisted that you do it i called her at the 22 55 as an adverse witness engelhardt would never do that never could do that and i would pardon talking about the trial i would have put her on the trial yes as an adverse hostile witness and i would have cross-examined her on her under oath testimony she's either lying or telling the truth either way is exculpatory and with mickens your honor way it's exculpatory yes it's exculpatory when someone you have no idea what the witness is going to say and you're willing to stand here and say to a united states court of appeals panel either way it's exculpatory i know exactly what she's going to have to either say or deny she's either going to have to agree with what she's already said under oath or she's way it incriminates her said everything under oath so she's going to both admit and deny but that is the problem with her as a witness right the problem with any criminal as a witness is that they are unreliable inherently but the the problem with with with with with tara legrand is she was sealed she was in cement with her testimony in her own trial and her testimony that she had defrauded people like dr dillinger in her plea bargain so either one worked either one worked that her waiver was ineffective or unenforceable well i don't represent her but uh in all probability uh that would be between her and her counsel i'm asking the question do you contend before us that her waiver she exposed herself totally as i understand that waiver do you have a contrary view to that yes mr mr engelhardt on her behalf pled fifth amendment 30 days after this trial and another proceeding so he was saying to the seattle washington court uh this woman cannot testify she must plead fifth amendment question about the enforceability of her waiver when he achieved the waiver knowing that he was never going to allow her to testify it was not an enforceable waiver if he if he believes he shouldn't testify it's not an enforceable waiver if he believes she shouldn't testify it is but he apparently can't go he can't go both ways and and and his waiver no it was unethical to even ask her and she was the only one he asked he didn't get a waiver from red he didn't get a waiver from kosal he didn't get a waiver from dr dillinger he didn't go back to dr dillinger when he supposedly re-represented tara lagran and he didn't get another waiver from tara lagran all these are required by the ethics in all the states and in mickens and i disagree with the mickens decision too but but it's fine to disagree but you know but it's distinguishable isn't it yes it is absolutely this it was an unbanked decision of this court so you you there were some people on the panel in front of you that also agree with you that mickens is wrong i know that doesn't make any difference it's all the land there is something that does make a difference in mickens in the oral argument better in failing questions by my colleagues i think you better finish with one sentence your red light's been on five of the justices question the ethics in the mickens case at the supreme court so they were unsettled it was a very tight case even at the supreme court it could have gone either way i just want to follow the question is that the difference in mickens was the sequential representation had nothing to do with the with the cat with the offense that it was that charge i remember the case it was a matter had nothing to here that's not the case whether sequential or simultaneous it was related to the same case there's a big more questions no no thank you very much um we will come down and greet the lawyers and then go directly to our next case
judges: Diana Gribbon Motz, Roger L. Gregory, Andre M. Davis